# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:22-CV-00620-KDB-DSC

| | |
|---|---|
| MICROBAN INTERNATIONAL, LTD., <br><br> Plaintiff, <br><br> v. <br><br> WILLIAM BARTLEY KENNEDY, POLYGIENE GROUP AB; AND BIO MASTER LLC, <br><br> Defendants. | **ORDER** |

**THIS MATTER IS BEFORE THE COURT** on the Plaintiff Microban International, Ltd.'s Motion For Temporary Restraining Order, Preliminary Injunction, and Expedited Discovery, which William Bartley Kennedy, the Defendant against whom the motion is directed, opposes. (Doc. Nos. 4, 12). For the reasons discussed below, the Court will deny the Motion.

## I. LEGAL STANDARD

Temporary Restraining Orders ("TRO") and Preliminary Injunctions are governed by Rule 65 of the Federal Rules of Civil Procedure, which provides that a TRO may be issued only if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). A Preliminary Injunction may issue only on notice to the adverse party. Fed. R. Civ. P. 65(a)(1). Here, Kennedy has received notice and filed a written

1

response. Thus, the Motion before the Court will be considered a motion for a Preliminary Injunction.[1]

Recently, the Fourth Circuit described the standard for a preliminary injunction as follows:

> We review the district court's injunction for abuse of discretion, *Centro Tepeyac v. Montgomery Cnty.*, 722 F.3d 184, 188 (4th Cir. 2013), examining all factual findings for clear error and legal conclusions de novo, *Leaders of a Beautiful Struggle v. Baltimore Police Dep't*, 2 F.4th 330, 339 (4th Cir. 2021). Though an "extraordinary remedy," a preliminary injunction is warranted where the plaintiff has established "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20, 24 (2008).

*Dmarcian Inc. v. Dmarcian Eur. BV*, case numbers 21-1721, 21-2005 and 22-1728 (4th Cir. February 14, 2023).

Thus, while a plaintiff's entitlement to preliminary injunctive relief is a matter of discretion with the Court, *see Metro. Regul. Info. Sys., Inc. v. Am. Home Realty Network, Inc.*, 722 F.3d 591, 595 (4th Cir. 2013), a plaintiff seeking a temporary restraining order, or a preliminary injunction must demonstrate that:

(1) he is likely to succeed on the merits,

(2) he is likely to suffer irreparable harm absent injunctive relief,

(3) the balance of the equities tips in his favor, and

(4) the injunction would be in the public interest.

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20, 129 S. Ct. 365, 374, 172 L.Ed.2d 249 (2008); *see Hebb v. City of Asheville, N. Carolina*, No. 1:22-CV-00222-MR-WCM, 2023 WL 1825081, at

---

[1] To the extent that Plaintiff's TRO motion is still before the Court, the standard for granting either a temporary restraining order or a preliminary injunction is the same. *See e.g.*, *U.S. Dep't of Lab. v. Wolf Run Mining Co.*, 452 F.3d 275, 281 n. 1 (4th Cir. 2006); *McNeill v. Bond*, No. 1:18CV786, 2022 WL 17526565, at *2 (M.D.N.C. Dec. 8, 2022), *report and recommendation adopted*, No. 1:18CV786, 2023 WL 112542 (M.D.N.C. Jan. 5, 2023).

*1–2 (W.D.N.C. Feb. 8, 2023). All four requirements must be "clearly" satisfied. *Winter*, at 24, 129 S. Ct. at 376. In sum, it is an exacting test because, according to the Supreme Court, "a preliminary injunction is an extraordinary remedy never awarded as of right." *Id*.

If a Preliminary Injunction is found to be warranted, then crafting a Preliminary Injunction is an exercise of discretion and judgment, often dependent as much on the equities of a given case as the substance of the legal issues it presents." *Trump v. Int'l Refugee Assistance Project*, ––– U.S. ––––, 137 S. Ct. 2080, 2087, 198 L.Ed.2d 643 (2017) (citing *Winter*, 555 U.S. at 20, 24); *Roe v. Dep't of Def.*, 947 F.3d 207, 231 (4th Cir. 2020), *as amended* (Jan. 14, 2020). And "[i]t is well established ... that a federal district court has wide discretion to fashion appropriate injunctive relief in a particular case." *Richmond Tenants Org., Inc. v. Kemp*, 956 F.2d 1300, 1308 (4th Cir. 1992). Indeed, a court should "mold its decree to meet the exigencies of the particular case." *Int'l Refugee Assistance Project*, 137 S. Ct. at 2087 (quoting 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2947 (3d ed. 2013)). In doing so, a court must ensure a preliminary injunction is "no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs," *Madsen v. Women's Health Ctr, Inc.*, 512 U.S. 753, 765 (1994) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)), and be mindful that "[t]he purpose of such interim equitable relief is not to conclusively determine the rights of the parties, but to balance the equities as the litigation moves forward." *Int'l Refugee Assistance Project*, 137 S. Ct. at 2087 (internal citation omitted).

## II. FACTS AND PROCEDURAL HISTORY

Microban is a corporation which does business in the fields of antimicrobial, odor control, and continuously active surface disinfection and sanitization technologies. Kennedy worked for Microban as a senior director of business development for about one-year. His job responsibilities

3

Case 3:22-cv-00620-KDB-DSC    Document 18    Filed 03/15/23    Page 3 of 13

included: (1) reporting to the President of the company and being a member of the leadership team; (2) being a member of the research and development ("R&D") team, where he oversaw or had direct involvement in the technical aspects of research and development of antimicrobial additives; (3) indirectly supervising about six subordinate R&D employees; (4) directly supervising about seven subordinate commercial sales employees; and (5) being designated as a regulatory chair, innovation chair, and sustainability chair. *See* Doc. No. 12-1, ¶ 8(a)-(e). Kennedy undisputedly had access to Microban's confidential information, which included paper copies of a price book and product selection guide. *Id*. ¶ 23

As a condition of his employment, the Defendant executed a Confidential Disclosure Agreement, which contained a restrictive covenant. The agreement stated, among other things, that "for twelve (12) months following the date of Employee's termination from employment with the Company…[the employee] agrees to…not…'Compete' with the Company or its 'Affiliates' within the restrictive 'Territory.'" *See* Doc. No.4-2.

About one-year into Kennedy's employment, he attended a meeting with Microban's senior management and the President of Microban's Parent Company (Barr Brands International). *See* Doc. No.1 at ¶ 28. During this meeting, Kennedy was allegedly slurring his words. *Id*. Kennedy denied he had been drinking and instead claimed that he had taken prescription medication the previous night. *Id*. ¶ 30. All the same, a drug and alcohol screen was conducted. The test results were positive for marijuana.

Kennedy explained to Microban that he lawfully bought a marijuana gummy during a work trip to Colorado. Still, Kennedy was terminated for being under the influence of drugs at work and for behavior in violation of Microban's code of business conduct and ethics. Kennedy was immediately remotely locked out of Microban's computer networks, systems, and company-

4

controlled electronic storage locations. *See* Doc. No. 12-1, ¶ ¶ 16-17. Microban also insisted that he return all company property he had in his possession. *Id.*

After his termination, Kennedy sent a series of written communications to Microban President Michael Ruby and Human Resource Business Partner Kim Brewer, demanding payment of severance, and threatening to damage Microban's business if it failed to meet his demands. *See* Doc. No. 1 ¶ 35. These communications, among other things, threaten to poach the Plaintiff's customers using confidential information obtained during his employment. *See* Doc. No. 1 ¶¶ 36-43. Kennedy contends these communications were merely hollow threats that followed what he perceived to be a wrongful termination. *See* Doc. No. 12 ¶ ¶ 18-19. With respect to his actual post-termination conduct, Kennedy, under oath, attests that:

> (a) he did not and has not made any offers to [one of Plaintiff's customers] nor has taken any action to interfere with Plaintiff's relationship with [one of Plaintiff's customers] (Doc. No. 1, ¶ 37, Doc. No. 12-1, ¶ 18); (b) he did not and has not taken any customer of Plaintiff's, nor has he taken any action to the best of his knowledge that would cause Plaintiff to lose a customer (Doc. No. 1, ¶ 38, Doc. No. 12-1, ¶ 18); (c) he did not and has not used any of Plaintiff's alleged confidential information (including pricing information) to disadvantage Plaintiff, interfere with its contractual or customer relationships, or to unfairly compete against Plaintiff (Doc. No. 1, ¶ 39, Doc. No. 12-1, ¶ 18); (d) he did not retain copies of confidential information in an "archive" following his employment termination – he did not "hack" his company-issued computer to thwart any attempt by Plaintiff to reset that computer (Doc. No. 1, ¶ 39, Doc. No. 12-1, ¶ 18); (e) After conducting a reasonable search, [he] has no reason to believe that he retained possession of any of Plaintiff's confidential information or trade secrets following his termination (Doc. No. 12-1, ¶ 18); (f) he has not shared Plaintiff's confidential information with any of Plaintiff's customers since his termination, because he doesn't have it to share (Doc. No. 1, ¶ 41); and (g) he did not and has not "deconstructed" anything related to Plaintiff's business and he did not and has not taken any action to "take or destroy [Plaintiff's business]" (Doc. No. 1, ¶ 45, Doc. No. 12-1, ¶ 18).

*See* Doc. No. 12-1.

In October 2022, Polygiene Group AB ("Polygiene") hired Kennedy . While Kennedy concedes that Polygiene may compete against Microban in some territories, industries, or vertical markets, he maintains that he is not performing "the same or materially similar duties [he]

5

performed for [the Plaintiff]." Predictably, Microban disagrees, *Id.* ¶ 51, and has therefore moved for a TRO and preliminary injunction. The matter is now ripe for this Court's consideration.

### III. DISCUSSION

To satisfy the *Winter* test, Microban must demonstrate a likelihood of success on the merits, irreparable harm, equity favors its side, and the public interest supports an injunction. As discussed below, Microban cannot satisfy any factor of the *Winter* test.

#### A. Likelihood of Success on the Merits

A Plaintiff seeking a preliminary injunction "need not establish a certainty of success but must make a clear showing that he is likely to succeed at trial." *Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017) (internal quotation marks omitted). "While it is [the] Plaintiff['s] burden, as the movant[ ], to make a showing sufficient to justify a preliminary injunction, 'the burdens at the preliminary injunction stage track the burdens at trial.'" *Harmon v. City of Norman*, 981 F.3d 1141, 1147 (10th Cir. 2020) (quoting *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 429 (2006)). "When considering a motion for preliminary injunction, a district court may assess the relative strength and persuasiveness of the evidence presented by the parties and is not required to resolve factual disputes in favor of the non-moving party." *Queen Virgin Remy, Co. v. Thomason*, No. 1:15-cv-1638-SCJ, 2015 WL 11422300, at *2 (N.D. Ga. June 10, 2015) (citing *Imaging Bus. Machs., LLC v. BancTec, Inc.*, 459 F.3d 1186, 1192 (11th Cir. 2006)).

In resolving contested allegations, the court must "assess the facts, draw whatever reasonable inferences it might favor, and decide the likely ramifications." *Weaver v. Henderson*, 984 F.2d 11, 14 (1st Cir. 1993) (quoting *Indep. Oil & Chem. Workers of Quincy, Inc. v. Procter & Gamble Mfg. Co.*, 864 F.2d 927, 933 (1st Cir. 1988)). At a preliminary injunction stage, allegations set forth in a verified complaint are treated the same as affidavits. *IDS Life Ins. Co. v.*

6

*SunAmerica Life Ins. Co.*, 136 F.3d 537, 542 (7th Cir. 1998) ("[v]erified complaints [are] the equivalent of affidavits"); *Synthes USA, LLC v. Davis*, No. 4:17-cv-02879-RBH, 2017 WL 5972705, at *1 n.2 (D.S.C. Dec. 1, 2017) (explaining that "a verified complaint is wholly sufficient for purposes of ruling on a preliminary injunction motion.") (citation omitted).

The success of Microban's claims depend on the enforceability of the restrictive covenant and its allegations that Kennedy violated the Defend Trade Secrets Act, 18 U.S.C. §§ 1831, *et seq.*, and the North Carolina Trade Secret Protection Act, N.C.G.S. §§ 66-154, *et seq.* ("TSPA"). However, at this point in the litigation, the Court cannot find that there is "clear" evidence that Microban is likely to succeed on the merits of these claims.

Under North Carolina law, restrictive covenants as a whole are "not viewed favorably in modern law[,]" *Hartman v. W.H. Odell & Assocs.*, 117 N.C. App. 307, 311, 450 S.E.2d 912 (1994), and must be carefully scrutinized. *ChemiMetals Processing v. McEneny*, 124 N.C. App. 194, 197, 476 S.E.2d 374 (1996); *McGriff Ins. Servs., Inc. v. Ryan Hudson & Digital Ins., LLC*, No. 22 CVS 680, 2023 WL 197441, at *6 (N.C. Super. Jan. 17, 2023). A central principle for determining whether a restrictive covenant is enforceable is whether it is tailored to be no more burdensome than is necessary to protect a legitimate business interest of the employer. If the covenant is "too broad to be a reasonable protection to the employer's business[,] it will not be enforced." *Whittaker Gen. Med. Corp. v. Daniel*, 324 N.C. 523, 529, 379 S.E.2d 824 (1989). *See also Hartman*, 117 N.C. App. at 316, 450 S.E.2d 912 (a covenant "must be no wider in scope than is necessary to protect the business of the employer"); *Sterling Title Co. v. Martin,* 266 N.C. App. 593, 597, 831 S.E.2d 627 (2019) (an "otherwise procedurally valid covenant not to compete" must still be "designed to protect a legitimate business interest of the employer").

The Court finds that Kennedy has raised legitimate questions over the breadth of the restrictive covenant. The agreement defines "Company," which is the entity Kennedy is prohibited from competing with, as Microban and its subsidiaries and affiliates. *See* Doc. No. 12-2. These subsidiaries and affiliates span North Carolina, Tennessee, Canada, Taiwan, and the United Kingdom. *Id*. While the parties dispute whether Kennedy directly or indirectly supervised any employees of these subsidiaries or affiliates, it appears undisputed that he himself did not directly work for any of them. Therefore, the restrictive covenant appears to preclude the Defendant from competing with companies on different continents that he has never worked for and with which he has, at most, only a tangential connection. *See Wells Fargo Ins. Servs. USA, Inc. v. Link*, No. 17 CVS 12848, 2018 WL 2123700 (N.C. Super. May 8, 2018), aff'd, 372 N.C. 260, 827 S.E.2d 458 (2019) ("[T]he Company" is defined so broadly in the Restrictive Agreements that it sweeps within its ambit customers of far-flung…subsidiaries and affiliates unrelated to [the relevant business], and customers with whom [the ex-employees] would have had no contact").

Likewise, the agreement's definition of "customer" is far-reaching. In the non-solicitation clause, "customer" is defined as: "all 'Persons,' firms or entities; (a) that Employee serviced, contacted, who contacted Employee, or for whom Employee supervised contact or service, as part of Employee's employment with the Company at any time during Employee's last twelve (12) months as a Company employee; and/or (b) about whom Employee obtained Confidential Information during his last twelve (12) months as a Company employee." *See* Doc. No. 1-2, Section 1.C.(ii). This definition could cover anyone who Kennedy contacted, who contacted him, or who had contact with someone he supervised about any topic that was "part of [his] employment with the Company." Indeed, it seems implausible that the Defendant could be sure he was complying with this provision as it is doubtful that he knows every "customer" who contacted

8

someone he supervised. As a result, it is not clear that the term "customers" is defined with the required exactitude. *See Aesthetic Facial & Ocular Plastic Surgery Ctr., P.A. v. Zaldivar,* 264 N.C. App. 260, 272-3, 826 S.E.2d 723, 732 (2019) (quoting *Heijl*, 196 N.C. App. at 307, 674 S.E.2d at 430) (But where "[a non-solicitation clause reaches] not only clients, but potential clients, and extends to areas where [p]laintiff had no connections or personal knowledge of customers, the [restriction] is unreasonable.").

In addition to the restrictive covenant, Microban argues that *Horner Int'l Co. v. McKoy*, 2014 N.C. App. LEXIS 240 (2014) supports the granting of an injunction based on the TSPA claim. However, this argument is unpersuasive. In *Horner*, the court held the North Carolina Trade Secret Protection Act permits preliminary injunctions where a prima facie case for "actual or threatened misappropriation of a trade secret" is established. N.C. Gen. Stat. § 66-154(a). A prima facie case is established by showing that a defendant "(1) [k]nows or should have known of the trade secret; and (2) [h]as had a specific opportunity to acquire it for disclosure or use or has acquired, disclosed, or used it without the express or implied consent or authority of the owner." N.C. Gen. Stat. § 66-155. Notably, in *Horner* the plaintiff's complaint alleged "with great detail and specificity the information Defendant has allegedly provided to his new employer." *Horner Int'l Co.*, 232 N.C. App. At 568. Here, as discussed further below in connection with the Court's discussion of irreparable harm, Microban has not made any specific allegation concerning the information allegedly misappropriated (and any general contentions are denied under oath by Kennedy).

In sum, based on the current record, the Court cannot find by clear evidence that the Plaintiff will likely succeed on the merits of its claims at trial. To be clear, the Court's analysis by no means forecasts or preordains a ruling on the merits. Rather, the Court only finds for the

9

purposes of this Motion that Microban has not met the high bar for its requested "extraordinary relief." The Motion will therefore be denied.

## B. Irreparable Harm

Microban must also make a clear showing that future irreparable harm is likely if an injunction is not entered. *Winter*, 555 U.S. at 21-22. "Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id*. at 22 (internal citation omitted). "Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date ... weighs heavily against a claim of irreparable harm." *Sampson v. Murray*, 415 U.S. 61, 90 (1974); *Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017). A plaintiff must overcome the presumption that a preliminary injunction will not issue when the harm suffered can be remedied by money damages at the time of judgment. *Id*., citing *Hughes Network Sys., Inc. v. InterDigital Commc'ns Corp.*, 17 F.3d 691, 693 (4th Cir. 1994).

Microban claims that if Kennedy is allowed to continue to work for Polygiene he will inevitably use, disclose, and misappropriate confidential information and trade secrets. To begin with, the Plaintiff's reliance on *Lumex, Inc. v. Highsmith*, 919 F. Supp. 624, 628 (E.D.N.Y. 1996) — to establish that irreparable harm may be presumed — is misguided. Setting aside that Plaintiff has failed to establish that any trade secret has actually been misappropriated, the Supreme Court has held that a mere possibility of irreparable harm is insufficient in order to obtain preliminary relief. *See Winter* 555 U.S. at 21; *see also eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 393, 126 S. Ct. 1837, 164 L. Ed. 2d 641 (2006). This rejection of a "possibility" standard clashes with

a presumption of irreparable harm. *See Bianco v. Globus Med., Inc.*, No. 2:12-CV-00147-WCB, 2014 U.S. Dist. LEXIS 35256, at *27 (E.D. Tex. Mar. 17, 2014) (calling *Lumex* into doubt post *Winter* and *ebay*); *see also Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118-19 (2d Cir. 2009) (holding that no presumption of irreparable harm arises in trade secret misappropriation cases when defendant uses trade secret without disseminating it and the injury is in the form of lost income from sales). Accordingly, Microban must make an individualized showing of irreparable harm but has failed to do so here.

Microban has identified no specific trade secret that has been misappropriated. It only makes generalized claims that Kennedy had "access" to "trade secrets" and that he will "inevitably" disclose them. Without more specificity, the Court cannot find that it is likely that the disclosure of these "trade secrets" will cause irreparable harm.[2] Microban has similarly offered no evidence to contradict Kennedy's assertion that his post-termination threats were merely the bluff of a disgruntled ex-employee. There is no evidence before the Court that Kennedy has ever acted on or is attempting to act on his earlier threats. This finding is buttressed by the fact that it has been over six months since Kennedy communicated these threats and Microban cannot point to a single instance of him following through on them. *See Am. Air Filter Co. v. Price*, 2017 NCBC 9 at ¶ 29, 2017 WL 485517 (N.C. Super. Wake Cnty., 16 CVS 13610, Feb. 3, 2017).

Accordingly, weighing all the circumstances, the Court finds that while irreparable harm to the Plaintiff is possible, it cannot hold that such harm is likely. Plaintiff has therefore failed to carry his burden of proof on the second element of the *Winter* test.

---

[2] This lack of specificity also raises a question of whether any alleged harm could be remedied by monetary damages. Without knowing what "harm" disclosure of these "trade secrets" would cause, the Court cannot find that monetary damages would be insufficient to compensation Microban. *See Sampson*, 415 U.S. at 90.

C. Balance of Equities

The third element that Microban must establish is that the balance of equities tips in its favor. There is little need to belabor this factor because the balance of equities here inevitably tips in favor of the party most likely to prevail on the merits. Moreover, the harm to Kennedy from the requested injunction appears to outweigh any ongoing harm to Microban if an injunction is denied as discussed above. Accordingly, the balance of the competing equities does not tip in Microban's favor.

D. Public Interest

The final factor in the *Winter* test is consideration of the public interest. "In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24, quoting *Romero–Barcelo,* 456 U.S. at 312 (reversing grant of an injunction for understating the Navy's ability to conduct realistic training exercises). Here, the "public consequences" of issuing an injunction in this private commercial matter are uncertain, or, more accurately, may – like the balancing of equities – depend on one's view as to the merits. There are of course public interests both in having employees free to pursue employment after they are terminated from a job and in companies being able to rely on *enforceable* restrictive covenants. Simply put, there are no strong public interests favoring one side or the other, without an assumption as to the merits, which again is uncertain. Therefore, the final factor of the public interest does not clearly favor entering the requested injunction.

In sum, none of the Winter factors favor the entry of the requested injunction so Microban's Motion must be denied.

## IV. ORDER

**NOW THEREFORE IT IS ORDERED THAT** Plaintiff's Motion For Temporary Restraining Order, Preliminary Injunction, and Expedited Discovery, (Doc. No. 4), is **DENIED**.

**SO ORDERED.**

Signed: March 15, 2023

Kenneth D. Bell
United States District Judge